IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STACI ADAMCIK, <br>         Plaintiff, <br><br> vs. <br><br> CREDIT CONTROL SERVICES, INC. <br> d/b/a Credit Collection Services, <br>         Defendant. | § § § § § § § § § § § § | Case No. 10-CV-00399-SS |

**PRIOR EXPRESS CONSENT UNDER THE
TELEPHONE CONSUMER PROTECTION ACT MAY BE REVOKED ORALLY**

**I.   INTRODUCTION.**

Staci Adamcik sued Central Credit Control Services, Inc. ("Central Credit"), for violating (among other laws) the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii).  A trial was held before a jury who, on November 9, 2011, returned a verdict in Ms. Adamcik's favor on her FDCPA and TCPA claims.  After the jury's verdict was returned the Court requested additional briefing on the question of whether "prior express consent" is subject to oral revocation under the TCPA.

**II.   PRIOR EXPRESS CONSENT UNDER THE TCPA IS SUBJECT TO ORAL REVOCATION.**

The TCPA does not define "prior express consent" and is silent as to how such consent may be revoked.  In 1992 the FCC ruled that a person's knowing release of their telephone number in connection with an established business relationship constitutes "prior express consent" for purposes of section 227(b)(1)(B) of the TCPA.  In 2008 the FCC ruled that a person's disclosure of their cellular telephone number in a credit application constitutes "prior express consent" for purposes of section 227(b)(1)(A) of the TCPA.  Both of these rulings rely heavily on a House Committee Report in which

1

the Committee emphasizes its "strongly held view" that TCPA consent arising, in essence, from the normal course of business dealings is subject to revocation by "instructions to the contrary" at any time.

Federal courts have recognized that the FCC's rulings demonstrate that "prior express consent" under the TCPA may be provided orally. And the regulations promulgated by the FCC specifically permit the oral revocation of "prior express consent" under section 227(b)(1)(B) where such consent has been deemed provided by an established business relationship.

In 2010, the FCC issued a Notice of Proposed Rulemaking in which it concluded that any written consent requirement adopted by the FCC under either section 227(b)(1)(A) or 227(b)(1)(B) should apply equally to the other because the two provisions include an identically worded exception for calls made with "prior express consent." Because the FCC has adopted a rule that "prior express consent" can in fact be revoked orally under section 227(b)(1)(B), it follows that "prior express consent" can be revoked orally under section 227(b)(1)(A). In February of this year, the United States District Court for the Southern District of California so held. This opinion is consistent with the FCC's statutory interpretation, its previous rulings and the legislative history upon which they are based, and the plain meaning of "consent" as illustrating by the Restatement (Second) of Torts.

Under the common meaning of "consent," its mere grant, which is not obtained in exchange for consideration, can be revoked at any time. The field in the loan application in which Ms. Adamcik listed her cellular telephone number was optional, and she received no consideration in exchange for disclosing it. The recording of her subsequent conversation with Central Credit is conclusive; Ms. Adamcik revoked any consent for Central Credit to place calls to her cellular telephone number using an automatic dialing system. Her revocation was valid.

The United States District Court for the Western District of New York has held otherwise. However, its decisions are based on the fundamental misunderstanding that debt collection calls are altogether exempt from the TCPA. This view is contrary to the plain language of the statute and several

FCC rulings which reaffirm that any calls placed to a cellular telephone number using an automatic telephone dialing system are subject to the TCPA's section 227(b)(1)(A) prohibitions.

> A. **The FCC Has Ruled That a Person's Knowing Release of His or Her Number (1) in Connection with an Established Business Relationship or (2) in an Application for Credit Constitutes "Prior Express Consent".**

The TCPA does not define "prior express consent" or the manner in which it may be revoked. *See* In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 25 F.C.C.R. 1501, 1509 (2010); *Gutierrez v. Barclays Group*, 10-CV-1012 DMS BGS, 2011 WL 579238 *3-4 (S.D. Cal. Feb. 9, 2011). Importantly, the statute contains no requirement that revocation of consent be in writing. *Gutierrez*, 2011 WL 579238 *4). Therefore, the FCC's interpretations are controlling unless arbitrary, capricious, or manifestly contrary to the statute. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

> 1. **The "Established Business Relationship" Rule.**

In 1992, under the rulemaking authority provided by 47 U.S.C. § 227(b)(2)(B), the FCC created the "established business relationship" rule. *See* In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C.R. 8752, 8769 (1992). This rule generally exempts artificial or prerecorded messages communicated within the scope of an "established business relationship" from regulation under section 227(b)(1)(B). Section 227(b)(1)(B) makes it otherwise unlawful to place a non-emergency telephone call to a residential line "using an artificial or prerecorded voice" without the recipient's "prior express consent." *Id.*

In crafting the "established business relationship" rule, the FCC relied upon the legislative history particular to House Report No. 102–317. H.R. Rep. 102-317, 1991 WL 245201, 13 ("House Report"). The FCC quoted the House Report in concluding that for purposes of Section 227(b)(1), "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, **absent instructions to the contrary**." 7 F.C.C.R.

8752, 8769 n. 57 (1992) (emphasis added) (quoting House Report, p. 13, "the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications"). (*See also* 25 F.C.C.R. 1501, 1513-14 (2010) (acknowledging origin).

### 2.  The Creditor Rule.

In 2008, the FCC created the "creditor rule." This rule generally exempts cellular telephone calls made by a creditor, to persons who previously provided their cell phone numbers to such creditor as part of a credit application, from regulation under section 227(b)(1)(A). <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 23 F.C.C.R. 559, 564 (2008). Section 227(b)(1)(A) makes it otherwise unlawful to place any non-emergency telephone call to a cellular telephone using an automatic dialing system (or predictive dialer) absent the "prior express consent" of the called party. *Id.*

The FCC created the "creditor rule" by clarifying "that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." 23 F.C.C.R. 559, 564 (2008). In support of its clarification, the FCC relied upon its 1992 Order and House Report support. The FCC quoted the portion of its 1992 Order citing to the House Report: "In the 1992 TCPA Order*,* the Commission determined that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, **absent instructions to the contrary**." 23 F.C.C.R. 559, 564 (2008) (quoting 7 F.C.C.R. 8752, 8769 n. 57 (1992); citing House Report, p. 17).

Concerning the "creditor rule" applicable to Section 227(b)(1)(A), the reasoning and authority of the FCC mirrors that utilized to support the "established business relationship" rule applicable to section 227(b)(1)(B). Importantly, both rules are subject to revocation through **instructions to the contrary.** *Compare* 7 F.C.C.R. 8752, 8769 n. 57 (1992) *with* 23 F.C.C.R. 559, 564 (2008). (*See also* House

Report, p 16) (emphasizing that it is the "strongly held view of the Committee" that the presence of consent should not be viewed as providing absolute relief from subscribers' privacy requests. If a subscriber asks a company not to call again, the company has an obligation to honor the request and avoid further contacts).[1]

### B. The "Prior Express Consent" Provided by an "Established Business Relationship" is Subject to Oral Revocation.

The FCC's definition of "established business relationship" has since been codified at 47 C.F.R. § 64.1200(f)(4). Subsection 64.1200(f)(4)(i) states: "The subscriber's seller-specific do-not-call request, as set forth in paragraph (d)(3) of this section, **terminates an established business relationship** for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." *Id.* Do-not-call requests may be made orally under paragraph (d)(3). *See* 64.1200(d)(3). (*See also* 25 F.C.C.R. 1501, 1516-17 (2010) ("Consistent with the TCPA's technical and procedural standards provision, the Commission's rules require . . . a telephone number that consumers can call during regular business hours to make a company-specific do-not-call request.").

The FCC's recognition that the exemption based on consent provided "in essence" or "in effect" through an "Established Business Relationship" is consistent with the language of the House Report upon which the "established business relationship" and "creditor" rules rely. *See e.g.* 22 F.C.C.R. 14302, 14305 (2007) (FCC Letter Citation describing termination of the "established business

---

[1] Counsel for Plaintiff respectfully notes that the House Report seems to consider the situation in which "the called party has provided the telephone number of such line to the caller for use in the normal business communications" as falling within the "established business relationship" exception while distinguishing that exception from the "prior express consent" otherwise contemplated by the statute. *See* House Report, 102–317, 102–317, H.R. REP. 102-317, 15, 1991 WL 245201, 16 ("The term does not apply to calls or messages where the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications. **In addition, if a subscriber has given "prior express permission or invitation" to a telephone solicitation, this consent renders the call solicited and relieves the caller of liability for relying on such permission.**").

relationship" under 47 C.F.R. § 64.1200(d)(3); citing 8752, 8766 n.47, 8770 n.63 (1992); House Report, p. 15).

      **C.**      **Under the FCC's Interpretation of the Statute the "Prior Express Consent" Provided by the "Creditor" Rule is Subject to Oral Revocation Because the "Prior Express Consent" Provided by the "Established Business Relationship" Rule is Subject to Oral Revocation.**

Because sections 227(b)(1)(A) and (b)(1)(B) of the statute include an identically worded exception for calls made with the "prior express consent", the FCC concluded in 2010 that "any written consent requirement adopted by the Commission should apply to both provisions."  <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 25 F.C.C.R. 1501, 1506 (2010) ("Because the two provisions include an identically worded exception for calls made with the 'prior express consent of the called party,' we tentatively conclude that any written consent requirement adopted by the Commission should apply to both provisions").

Applying the FCC's logic, the "prior express consent" provided by the "creditor rule" must be subject to oral revocation because the "prior express consent" provided by the "established business relationship" is subject to oral revocation.  The FCC has clearly expressed its interpretation of the statute as calling for equal treatment of the "prior express consent" requirement contained in section 227(b)(1)(A) (to which the "creditor rule" applies), and section 227(b)(1)(B) (to which the "established business relationship" applies).  The FCC's symmetrical treatment of the language identically shared by the two sections is further supported by the fact that FCC has repeatedly acknowledged that both exceptions arise from the same theory of consent discussed in the House Report, and that both exceptions exist only subject to "instructions to the contrary."  (Discussed *supra*).

      D.      **The United States District Court For The Southern District Of California Properly Held That Absent Statutory Language to the Contrary "Prior Express Consent" Under Section 227(B)(1)(A) Is Subject To Oral Revocation.**

In the matter of *Gutierrez v. Barclays Group*, the United States District Court for the Southern District of California examined the plain language of the statute and then determined that "absent language in the statute to the contrary" prior express consent provided under the "creditor rule" is subject to oral revocation. 10CV1012 DMS BGS, 2011 WL 579238 at *3-4 (S.D. Cal. Feb. 9, 2011).

The facts of *Guitierrez* are similar to the facts of this case. Ramon Gutierrez, the plaintiff, applied for a credit card account and listed his wife's cellular telephone number on the application. *Id.* at *1, 3. Under the "creditor rule" the Court determined that Mr. Gutierrez had therefore provided "prior express consent" to the originating creditor and defendant, Barclays Group, placing calls to his wife's cellular telephone using an automatic telephone dialing system — calls which section 227(b)(1)(A)(iii) otherwise prohibits. *Id* at *3. Mrs. Gutierrez requested that Barclays remove her cellular number from the account and stated that she did not want to receive any more calls on the account on her cellular phone. *Id.* at *3. Barclays argued that consent must be revoked in writing and therefore Mrs. Gutierrez's oral revocation was invalid. *Id.* at *3.

After recognizing that the statute does not expressly state whether prior express consent may be oral, the Court looked to the FCC's 1992 Report and Order and determined that it "strongly suggests that prior express consent need not be in writing." *Id.* at *4 (citing 7 F.C.C.R. 8752 ¶¶30-31 (1992) (using a credit application as an example of how a consumer may provide prior express consent for the use of their telephone number). Because consumers could either apply for credit through either an on-line application or over the phone, the Court found it unlikely that Barclays would assert that an on-line applicant gave prior express consent, but that the telephone applicant did not. *Id.* at *4. "Applying this logic, and absent language in the statute to the contrary, th[e] Court agree[d] with [Mr. & Mrs. Gutierrez] that prior express consent may be revoked orally and need not be in writing." *Id* at *4.

7

## III. THE *GUTIERREZ* OPINION IS CONSISTENT WITH THE FCC'S STATUTORY INTERPRETATION AND THE COMMON MEANING OF CONSENT AS DESCRIBED IN THE RESTATEMENT (SECOND) OF TORTS.

### A. The Mere Grant of Consent Not Obtained in Exchange for Consideration Can Be Revoked at Any Time Through Words or Conduct.

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term "[consent]" at the time Congress enacted the statute in [1991]." *Perrin v. U. S.*, 444 U.S. 37, 43 (1979). This includes an examination of the common-law definition. *Id.*

Under the contemporary and common meaning of the word "consent," "[t]he mere grant of consent, which is not obtained in exchange for consideration, can be revoked at any time. Restatement (Second) of Torts § 892A (1979). "The consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct. This unwillingness may be manifested to the actor **by any words or conduct inconsistent with continued consent** or it may be apparent from the terms of the original consent itself, as when a specified time limit expires." *Id* § 892A (1979) (emphasis added). (*See also Beers v. State*, 61 U.S. 527, 529 (1857) (party providing non-contractual "altogether voluntary" consent "may prescribe the terms and conditions on which it consents . . . and may withdraw its consent" at any time.) (*Accord*, *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).

The FCC's 2008 Declaratory Ruling, and the language of the 1992 Order and House Report upon which it is based, each dovetail with the common-law meaning of consent. *See* 23 F.C.C.R. 559, 564 (2008) (citing 7 F.C.C.R. 8752 (1992) ("persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, **absent instructions to the contrary**"); House Report, 102–317, 102–317, H.R. REP. 102-317, 15, 1991 WL 245201, at 17) (emphasizing the strongly held view of the Committee that if a subscriber asks a

8

company not to call again, the company has an obligation to honor the request and avoid further contacts).

      **B.    Through Her Words and Conduct Plaintiff Unambiguously Revoked Her Consent for Which Credit Control Provide No Consideration.**

No consideration was provided for Ms. Adamcik's disclosure of her cellular telephone number. She listed it in an optional field on her Wachovia Bank loan application. (Discussed *supra* at II). After listening to the recording of her telephone call with Credit Control no reasonable mind could disagree that Ms. Adamcik had revoked any and all consent for Credit Control to use an automatic telephone dialing system to place calls to her cellular telephone.

**IV.    THE FIRSTSOURCE ADVANTAGE CASES FROM THE WESTERN DISTRICT OF NEW YORK ARE BASED ON THE ERRONEOUS VIEW THAT ALL DEBT COLLECTION CALLS ARE EXEMPTED FROM THE TCPA.**

The United States District Court for the Western District of New York has held that oral revocation of "prior express consent" provided by the "creditor rule" under section 227(b)(1)(A) is ineffective. *See Starkey v. Firstsource Advantage, L.L.C.,* No. 07–CV–662A(Sr), 2010 WL 2541756, at *6 (W.D.N.Y. Mar.11, 2010); *Moltz v. Firstsource Advantage, Inc.*, Case No. 08–CV–239S, 2011 WL 3360010, *5 (W.D.N.Y. Aug.3, 2011); *Moore v. Firstsource Advantage, LLC*, 07-CV-770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011).

In *Starkey v. Firstsource Advantage, L.L.C.*, Magistrate Judge Schroeder was the first to decide this issue. Unfortunately, he erred in recommending — on the basis that the FDCPA requires written notice to cease debt collection efforts — that "prior express consent" could not be revoked orally. In relevant part, the opinion states: "Congress has clearly stated that debt collection efforts are governed by the FDCPA. Thus, plaintiff's attempt to infer that a verbal request to cease debt collection calls is sufficient under the TCPA and that any subsequent calls are in violation of the TCPA misses the mark. To cease debt collection calls, written notice is required. To the extent plaintiff wants to challenge the

FCC's December 28, 2007 Declaratory Ruling addressing prior express consent, the proper vehicle to make such a challenge is to file a petition for review of the FCC's final order in the Court of Appeals naming the United States as a party. *See Leckler v. Cashcall, Inc.,* No. C 07-04002 SI, 2008 WL 5000528 (N.D.Cal. Nov.21, 2008). *Starkey v. Firstsource Advantage, LLC*, 07-CV-662ASR, 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010) *report and recommendation adopted*, 07-CV-662, 2010 WL 2541731 (W.D.N.Y. June 21, 2010) (without substantive opinion).

Chief Judge Skretny followed the *Starkey* opinion twice soon after. *See Moltz v. Firstsource Advantage, Inc.*, 2011 WL 3360010, *5 (W.D.N.Y. Aug.3, 2011); *Moore v. Firstsource Advantage, LLC*, 07-CV-770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011). On August 30, 2010, Magistrate Judge Stickney of the United States District Court for the Northern District of Texas — Dallas Division agreed with the *Starkey* opinion. *Cunningham v. Credit Mgmt., L.P.*, 3:09-CV-1497-GB(BF), 2010 WL 3791104 (N.D. Tex. Aug. 30, 2010) report and recommendation adopted, 3:09-CV-1497-G(BF), 2010 WL 3791049 (N.D. Tex. Sept. 27, 2010) (no apparent objection to ruling on oral revocation).

### A. The FCC Has Made Clear That All Calls, Including Debt Collection Calls, Are Subject to Section 227(b)(1)(A).

In 1992 the FCC concluded "that an express exemption from the TCPA's prohibitions for debt collection calls is unnecessary because such calls are adequately covered by exemptions [] for commercial calls which do not transmit an unsolicited advertisement and for established business relationships." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752 (1992). The FCC also determined that "to the extent any conflicts exist, compliance with both [the TCPA and FDCPA] is possible through the use of live calls." *Id.*

In 2003, the FCC specifically affirmed that it is unlawful "to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number." In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C.R. 14014, 14039

(2003). "Noting that Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls, and that such calls can be costly and inconvenient, the FCC determined that the TCPA and its rules prohibit such calls to wireless numbers. The Commission also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. 23 F.C.C.R. 559, 568 (2008) (quoting 18 F.C.C.R. 14014, 14039 (2003)). Upon further consideration, the FCC stated: "we believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. As indicated above, Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls." 18 F.C.C.R. 14014, 14039 (2003).

In 2008, "the FCC determined that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party," the FCC determined that such calls are permissible." 23 F.C.C.R. 559, 564 (2008). However, the FCC explained in the next paragraph that "the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. . . . and "that this prohibition applies regardless of the content of the call, and is not limited only to calls that constitute 'telephone solicitations.'" 23 F.C.C.R. 559, 564 (2008). The FCC also restated that "the TCPA does not ban the use of automated dialing technology. It merely prohibits such technologies from dialing emergency numbers, health care facilities, telephone numbers assigned to wireless services, and any other numbers for which the consumer is charged for the call. Such practices were determined by Congress to threaten public safety and inappropriately shift costs to consumers." 23 F.C.C.R. 559, 566 (2008).

B.  **The *Starkey* Opinion Ignores the Plain Statutory Language, the FCC's Interpretation, and the Limitations Congress Placed on the FCC's Rulemaking Authority.**

In sum, the FCC could not have exempted all debt collection calls from the TCPA's section 227(b)(1)(A)(iii) prohibitions because Congress intentionally restricted its ability to do so. Accordingly, the *Starkey* argument — which stands upon the notion that debt collection calls are not governed by section 227(b)(1)(A)(iii) because Congress has clearly stated that debt collection efforts are governed by the FDCPA — plainly fails.

The *Starkey* opinion is limited by its misunderstanding that the TCPA was enacted by Congress *only* to address telemarketing calls and telemarketing practices where the plain language of the statute as confirmed many times by the FCC's interpretation proves that Congress enacted the TCPA also for the purpose of prohibiting "the use of autodialers to make **any call** to a wireless number in the absence of an emergency or the prior express consent of the called party." 23 F.C.C.R. 559, 564 (2008).

Finally, in holding that debt collection calls are subject to section 227(b)(1)(A)(iii), the FCC consciously noted that "debt collection calls are regulated primarily by the Federal Trade Commission and are subject to the requirements of the Fair Debt Collection Practices Act (FDCPA), which prohibits abusive, deceptive, and otherwise improper collection practices by third-party collectors. 15 U.S.C. § 1692 *et seq.*"). 23 F.C.C.R. 559, 568 (2008).

Dated:  November 16, 2011.	Respectfully submitted,

                                        WEISBERG & MEYERS, LLC


                              By: /s/ Noah D. Radbil
                                  Noah D. Radbil
                                  Texas Bar No. 24071015
                                  noah.radbil@attorneysforconsumers.com
                                  WEISBERG & MEYERS, LLC
                                  Two Allen Center
                                  1200 Smith Street, Sixteenth Floor
                                  Houston, Texas 77002
                                  Telephone:	(888) 595-9111
                                  Facsimle:	(866) 317-2674

                                  *Counsel for Plaintiff*
                                  STACI ADAMCIK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STACI ADAMCIK,     §<br>              Plaintiff,     §<br>     §<br>     §<br>vs.     §<br>     §<br>CREDIT CONTROL SERVICES, INC.  §<br>d/b/a Credit Collection Services,     §<br>              Defendant.     §<br>     § | Case No. 10-CV-00399-SS |

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2011, I electronically filed the foregoing document with the clerk of the U.S. District Court, Western District of Texas, Austin Division, using the electronic case filing system of the court which caused the same to be served upon Defendant through its attorney of record David Sander at dsander@sbylaw.com, 602 West 11th Street, Austin, TX 78701.  As a courtesy electronic copies of equal date were mailed.


                                                                                     By: /s/ Noah D. Radbil
                                                                                         Noah D. Radbil