IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

STACI ADAMCIK,
                    Plaintiff,

-vs-                                                   Case No.  A-10-CA-399-SS

CREDIT  CONTROL  SERVICES,  INC.  d/b/a
Credit Collection Services,
                    Defendant.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Credit Control Services, Inc.'s Motion for Entry of Judgment [#99], Plaintiff Staci Adamcik's Response and Motion for Entry of Judgment [#104], CCS's Reply [#107]; Adamcik's brief—Prior Express Consent Under the Telephone Consumer Protection Act May be Revoked Orally [#100], and CCS's Response to Plaintiff's Motion for Entry of Judgment [#103]. Having reviewed these filings, the applicable law, and the case file as a whole, the Court enters the following opinion and orders.

### Background

Adamcik applied to Wachovia Bank for a student loan to cover tuition for the University of Phoenix.  The loan was funded in 2008, with the first payment to be made on February 14, 2010. Adamcik apparently has made no payments.[1]  Wachovia Bank referred her account to CCS on March

---

[1] The Court notes there are strong hints in this case that Adamcik may have acted in bad faith in either applying for the loan, or in her behavior thereafter.  In particular, Adamcik may have had a prior relationship with her Arizona lawyer, such that filing a debt-collection related lawsuit was perhaps not entirely unforeseen.  Nevertheless, the merits of Adamcik's liability under the note—or otherwise—are not before the Court.

1, 2010, in order to either facilitate payment, or to obtain a completed forbearance application from her. The parties dispute whether she was actually in "default" or was merely "delinquent" on her account.[2] CCS began attempting to reach Adamcik by phone, using an automatic dialing system to repeatedly call both her home and cellular phones.

A trial was conducted in this case from November 7, 2011, through November 9, 2011. Adamcik contended CCS violated both federal and state law, particularly the Texas Debt Collection Practices Act (TDCPA),[3] the federal Fair Debt Collection Practices Act (FDCPA) and the federal Telephone Consumer Protection Act (TCPA). After the close of evidence, CCS moved for judgment as matter of law. However, the Court determined there may have been fact issues as to claims under all three statutes, and submitted questions to the jury accordingly. Regarding the state and federal debt collection claims, the verdict form asked whether CCS (1) violated both the TDCPA and FDCPA by making repeated phone calls for purposes of harassment,[4] (2) violated the FDCPA by calling her place of work, when CCS knew or should have known she was not allowed to receive such calls,[5] and (3) failed to provide disclosures required by the FDCPA.[6] As to the TCPA claims, the jury was asked whether Adamcik revoked her consent to receive, on her cellular phone, automatically dialed calls, and calls from an artificial or prerecorded voice system.[7] The jury was

---

[2] The Court held as a matter of law, based on the language of the contract, that Adamcik was in default, and thus the case fell within the scope of the FDCPA.

[3] Adamcik also asserted a tie-in claim under the Texas Deceptive Trade Practices Act.

[4] See 15 U.S.C. § 1692d(5); TEX. FIN. CODE § 392.302(4).

[5] See 15 U.S.C. § 1692c(a)(3).

[6] See id. § 1692g(a)(1)–(5).

[7] See 47 U.S.C. § 227(b)(1)(A)(iii).

further asked how many such calls, if any, were received after any revocation of consent. The jury returned a verdict on November 9, 2011. The jury found no liability under the TDCPA, and also answered "No" to the FDCPA questions regarding calls at work and failure to provide notice. However, the jury found CCS did "cause . . . Adamcik's telephones to ring, repeatedly or continuously, with intent to annoy, abuse, or harass," giving rise to statutory liability under the FDCPA,[8] for which the jury awarded her $300.00. Finally, the jury found Adamcik had revoked her consent to receive automatically dialed and artificial or prerecorded voice system to her cellular phone, and found further CCS had placed thirty-nine automatically dialed calls to her cellular phone after consent was revoked.[9]

## Discussion

CCS argues it is entitled to judgment notwithstanding the verdict because the jury did not have a legally sufficient evidentiary basis to find for Adamcik on her FDCPA harassment claim. CCS further asserts the jury's finding of revocation of consent to receive automatically dialed calls likewise lacks an evidentiary basis, arguing only a written revocation notice is effective under the TCPA, and Adamcik admits she provided no written notice. The Fifth Circuit has explained that a court should deny a motion for judgment as a matter of law after a jury has rendered its verdict unless the jury's decision was utterly insupportable by the evidence at trial. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 282 (5th Cir. 2007) ("[J]udgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor

---

[8]*See* 15 U.S.C. § 1692k(a)(2)(A).

[9]Although the jury found Adamcik had revoked consent to receive artificial or prerecorded calls, it found no such calls were made to her by CCS after revocation.

that reasonable jurors could not reach a contrary conclusion.").

## I.      FDCPA Claim—Intent to Harass

The FDCPA regulates the manner in which debt collectors interact with debtors.  Relevant

here, it forbids "any conduct the natural consequence of which is to harass, oppress, or abuse" the

debtor.  15 U.S.C. § 1692d.  One of the nonexclusive examples provided by the FDCPA is:

"[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or

continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* § 1692d(5).

Violation of the FDCPA makes a debt collector liable to the debtor for, *inter alia*, (1) "any actual

damage[s]," (2)  additional statutory damages up to $1,000, and (3) costs and reasonable attorney's

fees.  *Id.* § 1692k(a)(1)–(3).

The jury found CCS violated § 1692d, and awarded $300 in statutory damages under

§ 1692k(a)(2).  CCS urges the Court to set aside those findings, and argues the jury lacked sufficient

evidence to support the requisite finding of "intent to annoy, abuse, or harass" under the FDCPA.[10]

*See* 15 U.S.C. § 1692d(5).  The evidence showed CCS called Adamcik at least 134 times over an

approximately forty-day period.  CCS asserts this is not enough, and cites recent cases in other

district courts, holding intent to harass cannot be inferred from volume of calls alone, but must be

based on the overall nature and pattern of the calls.  *See, e.g., Daniel v. W. Asset Mgmt., Inc.*, No.

11-10034, 2011 WL 5142980, at *4 (E.D. Mich. Oct. 28, 2011).

The Court need not determine whether CCS is correct that volume of calls alone cannot

support a jury finding of intent to harass in violation of the FDCPA.  There was additional evidence

---

[10]Adamcik asserts CCS waived this issue by not presenting it in a Rule 50 motion prior to the jury verdict,  but any reasonable reading of CCS's Motion for Judgment as a Matter of Law [#86] at 5, shows CCS did timely raise this issue.  CCS also orally raised this point at the proper time.  Therefore, the Court rejects Adamcik's waiver argument.

which, particularly when viewed in the context of a motion for judgment notwithstanding the verdict, showed a "nature and pattern" of calls from which the jury could properly infer an intent to annoy, abuse, or harass Adamcik. Specifically, CCS placed a call to one of Adamcik's phones even as she was on the other phone, speaking with a CCS representative. Also, although CCS admitted its policy is to institute a "Wait Date," ceasing communications to a debtor for ten days upon request, CCS resumed calling Adamcik a mere two days after Adamcik requested the calls stop.[11] Furthermore, a CCS representative made an ambiguous statement to Adamcik about when or how the frequent calls could be stopped, from which the jury could have inferred CCS was representing it had no control over when and how often calls were placed to Adamcik. In other words, viewed in a light most favorable to Adamcik, the jury could have inferred a threat by the CCS representative that a high volume of calls would continue until CCS received payment, and CCS otherwise could not moderate the call frequency. Accordingly, the Court DENIES CCS's motion for judgment on this point, and GRANTS judgment on the verdict of $300.00 to Adamcik for her FDCPA claim.

## II.   TCPA Claim

### A.   Autodialer Calls to a Cellular Phone

The TCPA regulates the use of telephones to contact consumers. Relevant here, it forbids the use of certain automated telephone equipment, including using "any automatic telephone dialing system or an artificial or prerecorded voice" to call a cellular telephone without "prior express

---

[11]CCS argues this is not evidence, because CCS's own manual "is not the law." Def.'s Reply [#107] at 3. However, while CCS is correct in noting its manual is not part of the statute, its policies, and CCS's noncompliance with those policies in this case, are relevant evidence from which the jury could infer an intent to abuse, annoy, or harass Adamcik.

consent" of the consumer.[12]  47 U.S.C. § 227(b)(1)(A)(iii).

An "automatic telephone dialing system" (hereinafter referred to as an autodialer) means equipment which has the capacity: "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1)(A)–(B). There is no dispute CCS was using an autodialer to place numerous calls to Adamcik's phones, including her cellular phone.  However, the evidence at trial conclusively showed Adamcik provided her cellular telephone number to Wachovia in connection with her application for a student loan. The FCC has ruled this constitutes prior express consent under § 227(b) to receive autodialer calls related to debt collection.[13]  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 23 FCC Rcd 559, 564 (2008) [hereinafter 2008 Ruling]. As such, the only question for the jury was whether Adamcik had revoked this implied express consent.  The jury found Adamcik indeed had revoked consent, presumably based on a phone conversation with CCS representatives.  The jury further found CCS used its autodialer to place thirty-nine calls to Adamcik's cellular phone after the revocation, in violation of the TCPA.

CCS argues Adamcik's oral revocation of consent was ineffective as a matter of law, and

---

[12]It is important to bear in mind that the TCPA also, in subsection (c), creates a separate cause of action for telephone solicitations which violate FCC regulations. *See* 47 U.S.C. § 227(c)(5).  Subsection (c) is not at issue in this case, but prior decisions appear to have confused or conflated the two causes of action at times, as discussed below. Also, the FCC's treatment of subsection (c) is sometimes informative in application of subsection (b).

[13]The Court notes this interpretation does violence to the clear language of § 227—the FCC has, in effect, engrafted an implied consent exception onto the statute's requirement of *express* prior consent. *See Leckler v. Cashcall, Inc.*, 554 F. Supp. 2d 1025, 1033 (N.D. Cal. 2008), *vacated*, No. C 07-04002 SI, 2008 WL 5000528.  However, under the Hobbs Act, this Court has no jurisdiction to review the FCC's rule, and so the Court duly applied the rule in the jury instruction and verdict form here. *See Leckler v. Cashcall, Inc.*, No. C 07-04002 SI, 2008 WL 5000528 at *2–3 (N.D. Cal. Nov. 21, 2008) (holding district court had no jurisdiction to review FCC Declaratory Ruling by action of the Hobbs Act, and vacating prior opinion).  The Hobbs Act provides that federal courts of appeal have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1).

therefore requests Adamcik's TCPA claim be dismissed with prejudice, because there was no evidence Adamcik made a written revocation. CCS notes that the FDCPA requires a debt collector to cease communicating with a debtor, but only upon a request in writing. CCS asserts the FDCPA's writing requirement should apply to Adamcik's TCPA claim. Whether a written revocation is required in a TCPA action in the debt-collection context is a difficult question, but as explained below, the Court ultimately agrees with Adamcik that an oral revocation is sufficient under the TCPA.

**B.     Revocation of Consent**

What makes this question difficult is that it arises at the intersection of two distinct statutory schemes: the FDCPA and the TCPA. Standing alone, each statute is relatively easy to interpret. Relevant here, the FDCPA provides, upon a written request from a debtor, a creditor or debt collector is required to cease communicating with the debtor. 15 U.S.C. § 1692c(c). Conversely, the TCPA is silent on how consent to receive autodialer calls can be revoked, but that simply means, for a host of reasons under the common law and canons of statutory construction, that an oral revocation should be effective. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 892A cmt. i. (1979) ("The consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct. This unwillingness may be manifested to the actor by any words or conduct inconsistent with continued consent . . . ."); RESTATEMENT (SECOND) OF CONTRACTS § 42 cmt. d (1981) ("Any clear manifestation of unwillingness to enter into the proposed bargain is sufficient [to achieve revocation]."). The difficulty is whether, when a debtor brings a TCPA claim, the FDCPA's writing requirement should be read into the TCPA. As discussed below, other district courts have divided on this question. An examination of both (1) the

relative scope and operation of the statutes, and (2) the prior case law and FCC orders, persuades the Court that the FDCPA's writing requirement does not apply to a TCPA claim.

### 1.      Scope and Operation

An FDCPA request to cease communications differs in scope and operation from a TCPA revocation of consent. The former is broad in scope, and—once properly invoked by the debtor—prohibits virtually all communications from the debt collector to the debtor. The latter is tightly circumscribed: it does not even prevent all communications to all types of phones, it merely withdraws the express prior consent to receive autodialer calls to a cellular phone.

Specifically, § 1692c(c), entitled "Ceasing communication," provides: "If a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . ." 15 U.S.C. § 1692c(c). This is a blanket prohibition on further communications, save only that, after receiving the consumer's written notice, the debt collector is allowed:

> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

*Id.* § 1692c(c)(1)–(3). However, it is a prohibition which exists only after the consumer notifies the debt collector in writing—the default position is, of course, that debt collectors are free to make non-abusive efforts to contact debtors. *Id.* § 1692c(c).

By contrast, the revocation of consent under § 227 is considerably different in both operation and effect.  Section 227(b) forbids all use of automatic dialer or prerecorded voice systems to call cellular phones, unless and until the consumer consents to such calls.  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014 (2003) [hereinafter 2003 Order].  That is, the prohibition exists as a matter of law without any affirmative act by the consumer.   Only when the consumer affirmatively consents to receive such communications will the prohibition disappear.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  As noted above, the FCC has ruled the act of applying for credit constitutes express prior consent under § 227(b) to receive autodialer calls.   2008 Ruling at 564.

Turning to the effect of § 227(b), it has no prohibition or effect at all on ordinary, "live" phone calls—the statute's express terms limit its application to automatic dialer or prerecorded calls.  *See* 47 U.S.C. § 227(b)(1)(A); *see also In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd 8752, 8768 (1992) [hereinafter 1992 Order] ("We emphasize that under the prohibitions set forth in § 227(b)(1) . . . only calls placed by automatic telephone dialing systems or using an artificial or prerecorded voice are prohibited.").  Thus, when a consumer effectively revokes her prior express consent under § 227(b), the only result is to reinstate the statute's prohibition on the use of automatic dialer or prerecorded calls to the consumer's cellular phone.  *See* 47 U.S.C. § 227(b)(1)(A); 2008 Ruling at 565; *cf.* 1992 Order at 8773 n.72 ("A creditor may solicit a residential subscriber using a prerecorded message as long the established business relationship has not been previously severed by the debtor.").  Any doubt this is the case is dispelled by the 1992 Order, which specified "to the extent any conflicts exist, compliance with both statutes is possible through the use of live calls."  1992 Order at 8773.  Of

course, if the debtor wishes to bring an end to *all* communication, then she must meet § 1692c(c)'s written notice requirement. *See* 15 U.S.C. § 1692c(c).

## 2.    The *Starkey* Decision

Unfortunately, the statute and FCC rulings provide no rule for when or how a debtor–consumer's (implied) prior express consent under § 227(b) may be revoked.  The Court is apprised of five district court opinions addressing this issue, albeit reaching different outcomes. Four of the opinions (the *Starkey* line of cases) found revocation under § 227 is governed by the "cease communication" provision found in § 1692c(c), and accordingly held an oral request to cease making autodialer calls was ineffective.  *Moore v. Firstsource Advantage, LLC*, No. 07–CV–770, 2011 WL 4345703, at *11 (W.D. N.Y. Sept. 15, 2011); *Moltz v. Firstsource Advantage, LLC*, No. 08–CV–239S, 2011 WL 3360010, at *5 (W.D. N.Y. Aug. 3, 2011);  *Cunningham v. Credit Mgmt., L.P.*, No. 3:09-cv-1497-G (BF), 2010 WL 3791104, at *5 (N.D. Tex. Aug. 30, 2010) (recommendation of magistrate judge); *Starkey v. Firstsource Advantage, LLC*, No. 07–CV662A, 2010 WL 2541756, at *6 (W.D. N.Y. Mar. 11, 2010) (recommendation of magistrate judge).  The other opinion conversely held an oral revocation was effective to restore § 227(b)'s prohibition. *See Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011) (holding a verbal revocation of consent to receive debt collection calls to a wireless number is sufficient under the TCPA).

Specifically, *Gutierrez* noted the plain language of the TCPA, as well as the 1992 Order, suggest oral revocation is effective. *Id.*  The court further reasoned (1) consumers can apply for credit orally, such as over the phone, (2) "[i]t seems highly unlikely . . . an on-line applicant gave prior express consent, but [a] telephone applicant did not," and (3) therefore, "absent language in the

statute to the contrary," oral revocation was effective. *Id.* For the reasons discussed herein, the Court agrees with the conclusion in *Gutierrez*, and rejects that of the *Starkey* line of cases.

Of the four cases holding a written revocation is required under the TCPA, the most recent three simply followed the holding of the first, *Starkey v. Firstsource Advantage, LLC*. *See Moore*, 2011 WL 4345703, at *11; *Moltz*, 2011 WL 3360010, at *5–6 (applying *Starkey*, and holding when a case is "primarily a debt collection dispute" the "FDCPA overrides the TCPA."); *Cunningham*, 2010 WL 3791104, *5 (citing *Starkey*, and finding its holding is "consistent with the protections of the FDCPA"). Therefore, the Court addresses *Starkey* in some detail, but will say no more about the other opinions, because they do not add any reasoning beyond that found in *Starkey*.

Like this case, *Starkey* involved both FDCPA claims, and TCPA § 227(b) claims. *See Starkey*, 2010 WL 2541756, at *3–4. In deciding *Starkey*, the magistrate judge of the Western District of New York declared "This is a debt collection case, not a telemarketing case." *Id.* at *4. By doing so, the court effectively held compliance with the FDCPA excuses a debt collector from compliance with the TCPA. This result is contrary to both the language of the statutes in question, and by the FCC's guidance in various orders and rulings. A further reason the Court declines to follow *Starkey* is the *Starkey* court also appears to have conflated the autodialer and telephone solicitation causes of action. This is problematic because, while the FCC has made clear debt-collection calls are generally not telephone solicitations under subsection (c) of the TCPA, the FCC has equally made clear the autodialer prohibitions found in subsection (b) *do* apply to debt collectors.

a.      **The FDCPA does not Override the TCPA**

The debt collector in *Starkey* made only six to fourteen calls within a two month period, and there was no evidence the debt collector "intended to harass, oppress, or abuse [the plaintiff] in any

way." *Starkey*, 2010 WL 2541756, at *5. The debt collector was thus entitled to summary judgment showing it had complied with the FDCPA. *See id.* However, in turning to the plaintiff's TCPA claim, the *Starkey* court subordinated the TCPA to the FDCPA's provisions. "Although the TCPA has some application to the instant case insofar as defendant was placing prerecorded automated calls to plaintiff's cellular telephone, Congress has clearly stated that debt collection efforts are governed by the FDCPA." *Id.* at *6. In doing so, the *Starkey* court contravened the FCC's guidance on the TCPA's application to debt collectors. *See* 2008 Ruling at 565 (noting the prohibition on automatic dialer calls applies "regardless" of the content of the calls); 2003 Order ("We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.").

In point of fact, the TCPA contains no general exemption for debt collectors, nor is their conduct solely governed by the FDCPA. They are just as subject to the provisions—*all* the provisions—of the United States Code as anyone else. Neither has the FCC exempted them from the cellular phone provisions of the TCPA. *See* 2008 Ruling at 565; *id.* at 567 "[W]e expect debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers, and to comply with the TCPA's prohibition on telephone calls using an autodialer or an artificial or prerecorded voice message to wireless numbers."); 1992 Order at 8773 (declining to adopt "an express exemption from the TCPA's prohibitions for debt collection calls").

To the contrary, FCC orders exhibit the Commission's awareness of overlap between the TCPA and the FDCPA, and that debt collectors' conduct is subject to regulation under both statutes. *See, e.g.*, 1992 Order at 8768 (ordering that the TCPA's time of day rules match those of the

FDCPA); *id.* at 8767–68 ("We concur with the commenters that any conflict between the requirements of the TCPA and the FDCPA would make compliance with both statutes confusing."); *id.* at 8772–73 (considering conflict between FDCPA's confidentiality requirements, and TCPA's caller identification rules). As such, debt collection cases and TCPA cases are not mutually exclusive. And, since the two statutes are not in conflict, the Court must apply both where relevant.

The *Starkey* court held otherwise, noting "[t]he FDCPA, not the TCPA, was enacted by Congress to, *inter alia*, eliminate abusive debt collection practices by debt collectors." *Starkey*, 2010 WL 2541756, at *5. But of equal dignity to the FDCPA's prohibition on abusive debt collection practices is the TCPA's prohibition on automated calls to cellular phones. Both are duly enacted federal laws, and neither includes any provision subordinating one to the other. Therefore a court must apply both statutes—a court may not arbitrarily label a suit a "debt collection case," and then proceed to ignore one applicable statute in favor of another, or judicially amend one statute to add provisions from the other. *See Ruckelhaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984) ("But where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.") (quotations and citations omitted). Also, construing one statute to trump another—absent any statutory instruction to do so—violates a bedrock principle of statutory construction: "when possible, courts should construe statutes . . . to foster harmony with other statutory and constitutional law." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994).

If Congress or the FCC had thought a broad exemption for debt collectors was merited, they could (and perhaps should) have created one. That the Legislature or the FCC could have created a broad exemption is readily demonstrated: the FCC *has* specified debt collection calls are not

-13-

"telephone solicitations" under the separate cause of action for unconsented solicitations established by § 227(c). *See* 2008 Ruling at 565. Extending this exemption to the autodialer cause of action under subsection (b) might be a prudent policy, but it is not for this Court to craft such a rule.

**b.     Telephone Solicitation Violations are Distinct from Autodialer Violations**

The *Starkey* court appears to have conflated the autodialer and telephone solicitation causes of action. "[C]alls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on 'telephone solicitations.'" *Starkey*, 2010 WL 2541756, at *5. That is true, but it is irrelevant to determining the revocation standard under § 227(b), because the TCPA is not only directed at telephone solicitations, it is also directed at autodialer calls to cellular phones, as reflected by the different subsections of § 227, which create separate causes of action for telephone solicitations and automated calls to cellular phones. *Compare* 47 U.S.C. § 227(b)(3) (establishing cause of action for autodialer or prerecorded calls made in violation of § 227(b)), *with id.* § 227(c)(5) (creating cause of action for telephone solicitations made in violation of FCC regulations promulgated in accordance with § 227(c)).

Moreover, Congress further distinguished between the telephone solicitation and autodialer causes of action created by the TCPA by specifying the provisions of subsection (c) "shall not be construed to permit a communication prohibited by subsection (b) of this section." 47 U.S.C. § 227(c)(6).  And the FCC has specifically reiterated (1) the TCPA's scope extends beyond telephone solicitations, and (2) while debt-collection calls are not subject to the TCPA's restrictions on telemarketing, they are subject to the prohibitions on automatic dialer calls.

> We also reiterate that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.  We note that this

> prohibition applies regardless of the content of the call, and is not limited only to calls that constitute "telephone solicitations." However, we agree with ACA and other commenters that calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing. Therefore, calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on "telephone solicitations."

2008 Ruling at 565 (footnotes omitted). As such, any exemption debt collectors may have from telephone solicitation claims does not shield them from an autodialer claim.

In conclusion, the *Starkey* court's explanation that "to cease debt collection calls, written notice is required," *Starkey*, 2010 WL 2541756, at *6, while an accurate statement of law under the FDCPA, ultimately misses the mark. As explained above, revocation of consent under § 227(b) does not operate to stop all debt collection calls, it operates to stop only autodialer calls to a cellular phone. Significantly, none of the four cases requiring a written revocation under § 227(b) considered this distinction. Rather, beginning with *Starkey*, they seem to have equated the narrow revocation of consent under the TCPA with the broader cease communications request under the FDCPA. This undermines their persuasiveness on the particular point of law at issue here. Therefore, in light of (1) the FCC's guidance, and (2) the Court's duty to apply both statutory schemes, and (3) the plain meaning of the statutes, the Court holds oral revocation of consent is legally effective under the TCPA, even in the debt-collection context.

## III.   TCPA—Damages

The evidence in this case dovetails neatly with the foregoing analysis. Adamcik, over the phone, did not attempt to end all debt-collection communication—she undertook to provide a forbearance form to CCS (of course, even if she had attempted to end all communication, such an oral request would have been ineffective under § 1692c). However, she also adamantly requested

-15-

that CCS stop the automatic calls, particularly after she received yet another such call while on the phone with the CCS representative. The jury accordingly found Adamcik had revoked her consent to receive autodialer calls under § 227(b), and duly calculated how many such calls CCS made to her after the revocation. These calls, made once the § 227(b) prohibition was back in place because of Adamcik's revocation, give rise to statutory liability under § 227(b)(3)(B) for either "actual monetary loss from such a violation, or . . . $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). There was no evidence of any actual monetary loss. Having determined the FDCPA's written request requirement does not apply to the TCPA, and noting there is no other basis on which to impose such a requirement here, the Court holds the jury's finding of revocation cannot be set aside.[14] Therefore, the Court is compelled to award Adamcik $500 for each of the thirty-nine violations found by the jury, for a total of $19,500.

The Court fully believes this is an undeserved windfall to Adamcik, which is not merited due to her scarcely concealed bad faith actions, and is also out of all proportion to whatever minimal harm she may have suffered due to CCS's conduct. Nevertheless, Congress has apparently mandated this amount of damage—at least $500 per violation, and no less—regardless of the underlying behavior of the consumer, or other equitable considerations.[15] Strangely, and frustratingly, Congress *has* given courts discretion to award less than $500 per violation of the telephone solicitation

---

[14]CCS asserts Adamcik's revocation request was an unenforceable attempt at oral modification of her contract with Wachovia. Def.'s Resp. to Pl.'s Mot. for Entry of J. [#103] at 3 ("The Plaintiff gave Wachovia Bank the authority, to contact her on her cell phone . . . and there is no evidence that such authorization was modified in writing . . . ."). This argument fails because the issue is not whether CCS was precluded from contacting Admacik on her cell phone (it was not) but whether CCS could continue using an autodialer to place such calls. As explained previously, the TCPA would not prevent CCS from making live calls to Adamcik's cell phone, or, for that matter, from using an autodialer to reach her landline.

[15]The Court can only presume Congress intended the $500-minimum per violation as a quasi-regulatory measure, to deter TCPA violations generally.

subsection of the TCPA, § 227(c), but required a $500 minimum for autodialer violations under § 227(b). *Compare id.* § 227(c)(5) ("[A]ctual monetary loss from such a [telephone solicitation] violation, or to receive *up to* $500 in damages for each such violation, whichever is greater.") (emphasis added), *with id.* § 227(b)(3)(B) ("[A]ctual monetary loss from such a[n automated telephone equipment] violation, or to receive $500 in damages for each such violation, whichever is greater."). It is difficult to understand why Congress treated these two closely related causes of action so differently, but the Court must apply the statute as written. Rather, the only discretion Congress has afforded the Court in this case is whether to *increase* damages, as discussed below:

Adamcik also moves the Court to find CCS violated the TCPA willfully or knowingly, and to impose treble damages accordingly. The statute provides:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3). "The Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Tex. v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001).

Applying that standard here, the Court finds CCS did not willfully or knowingly violate § 227(b). No evidence was presented which would support a finding that CCS was more than negligent in its TCPA violation—specifically, there was no evidence CCS knowingly disregarded Adamcik's revocation of consent, nor was there any evidence CCS knew or should have known it

was violating the TCPA.[16] *Cf. id.* (finding willful and knowing violation of TCPA when defendants "made a knowing, wilful, deliberate and calculated decision to continue sending intrastate fax advertisements without the recipients' consent and without having an established business relationship with the recipients" and continued doing so even after this Court held the TCPA applied to their conduct). Therefore the Court, exercising what little discretion it has, declines to award trebled damages under § 227(b)(3). Indeed, even if CCS had acted willfully, the Court would be loath to use its discretion to balloon Adamcik's windfall in this case even further.

## Conclusion

In accordance with the foregoing,

IT IS ORDERED that CCS's Motion for Entry of Judgment [#99] is DENIED;

IT IS FURTHER ORDERED that Adamcik's Response and Motion for Entry of Judgment [#104] is GRANTED in part and DENIED in part, as described above;

IT IS FURTHER ORDERED that CCS's Motion for Judgment as a Matter of Law [#86] is GRANTED IN PART and DENIED in part, per this Court's Oral Order of November 8, 2011;

IT IS FINALLY ORDERED that all other pending motions [##76, 77, 79] are DISMISSED AS MOOT.

SIGNED this the _19th_ day of December 2011.

*Sam Sparks*

SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[16]Whether CCS willfully or knowingly violated the TCPA is a separate issue from whether CCS had intent to "annoy, abuse, or harass" Adamcik in violation of the FDCPA.

399 final judgment jih.wpd                                    -18-